UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOAQUIN DEAN,                                        :
                    Plaintiff,            :
                                                                                   :

v.                                                  :           **OPINION AND ORDER**

                                                                    :           21 CV 8320 (VB)
JEREMY DOBERMAN and MARC                             :
WOHLGEMUTH,                                          :
                    Defendants.        :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Joaquin Dean, proceeding pro se, brings this action against Jeremy Doberman

and Marc Wohlgemuth, attorneys for the purchaser of property formerly owned by plaintiff in

quiet title and holdover tenant proceedings.  Plaintiff alleges defendants made discriminatory and

inaccurate statements during state court proceedings in violation of the Fair Housing Act of

1968, 42 U.S.C. §§ 3601 et seq. ("FHA").  Plaintiff seeks to enjoin the sale of his property and

his eviction from the property.

      Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules

12(b)(1)[1] and 12(b)(6), as well as their request for a filing injunction.  (Doc. #21).

---

[1]     Defendants bring the motion pursuant to Rule 12(b)(6).  However, their argument that
dismissal is warranted pursuant to the Rooker-Feldman doctrine is jurisdictional and thus "the
appropriate vehicle for such defenses is in a Rule 12(b)(1) motion."  Lewis v. Legal Servicing,
LLC, 2022 WL 2531817, at *4 n.8 (S.D.N.Y. Mar. 15, 2022), report and recommendation
adopted sub nom. Lewis  v. Steward, 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022).
Nevertheless, "[d]efendants' failure to invoke Rule 12(b)(1) is immaterial because the court is
independently obligated to determine whether it has subject matter jurisdiction."  Id.; see Fed. R.
Civ. P. 12(h)(3).

      Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

      Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See
Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

For the reasons set forth below, both the motion to dismiss and the request for a filing injunction are GRANTED.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, any documents attached thereto,[2] and certain factual allegations in plaintiff's opposition.[3]   Further, the Court takes judicial notice of court filings in other litigation, not for their truth but for the fact that such filings were made and that other litigation exists, and public records.[4]   The Court draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     Foreclosure Action

In 2010, JPMorgan Chase Bank, N.A. ("J.P. Morgan") filed an action in Supreme Court, Rockland County, seeking to foreclose (the "Foreclosure Action") a mortgage on a house then owned by plaintiff located at 246 Cherry Lane, Suffern, New York, 10901 (the "Property").

Plaintiff identifies the Property as his residence.   Foreclosure proceedings ensued, and on July 2,

---

[2]     In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."   DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

[3]     On October 21, 2022, plaintiff filed an opposition.   (Doc. #29).   On October 25, 2022, plaintiff filed an amended opposition, which is the operative opposition.   (Doc. #30 ("Opp.")).

Because plaintiff is proceeding pro se, the Court considers new allegations in the opposition, to the extent they are consistent with the amended complaint and against persons named as defendants in this action, as explained infra in Part II.   See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).

[4]     See Melendez v. City of New York, 16 F. 4th 992, 996 (2d Cir. 2021) (matters of public record); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (court filings).

2014, the state court entered a judgment of foreclosure and sale in the Foreclosure Action (the "Foreclosure Action Judgment").  (Doc. #23-1).

After the Foreclosure Action Judgment, plaintiff filed six bankruptcy petitions in this district, all seeking to stop the foreclosure of the Property through the effect of the automatic stay.  (Doc. #23-2).  On June 19, 2018, the Bankruptcy Court issued an Order concluding the automatic stay did not bar enforcement of the Foreclosure Action Judgment or related eviction proceedings against plaintiff, stating "the foreclosure sale conducted on May 2, 2018, is hereby validated nunc pro tunc, on the Property, in all respects."  (Doc. #23-3 (the "Validation Order") at ECF 2).  U.S. Bank Trust ("U.S. Bank") then completed its purchase of the Property; however, the Validation Order did not permit U.S. Bank's deed (the "Referee's Deed") to be recorded (id.), and thus, the Rockland County Clerk was later ordered to expunge it from its records.  (See In re Joaquin Dean, 18-BR-11281 (CGM) (Bankr. S.D.N.Y.), Doc. #38 (ordering that "the foreclosure sale conducted on May 2, 2018 as to the Subject Property remains valid in all respects")).

II.   Quiet Title and Holdover Actions

Thereafter, Communipaw Lafayette LLC ("Communipaw") entered into a contract to purchase the Property from U.S. Bank.  On May 19, 2021, Communipaw filed a quiet title action in Supreme Court, Rockland County (the "Quiet Title Action"), seeking, as U.S. Bank's contract vendee, to:  (i) establish the Bank's title to the Property; and (ii) permit a copy of the Referee's Deed to be rerecorded, as the original had allegedly been lost or was unavailable to U.S. Bank. (Doc. #23-4 at ECF 3, 6).  Defendants Doberman and Wohlgemuth are attorneys at the law firm Marc Wohlgemuth & Associates P.C. and represented Communipaw in the Quiet Title Action.

On July 26, 2021, the state court entered an order and judgment in the Quiet Title Action (the "Quiet Title Action Judgment"), which quieted title to the Property in U.S. Bank and directed the Rockland County Clerk to accept a copy of the Referee's Deed for filing.  (Doc. #7 ("Am. Compl.") at 60–61).  A subsequent deed memorializing U.S. Bank's sale of the property to Communipaw was recorded on August 20, 2021.  (Doc. #23-5).

On August 10, 2021, Communipaw, again represented by defendants, served plaintiff with a "ten-day" eviction notice, directing him to leave the Property by August 25, 2021, and informing him that if he failed to do so, Communipaw would commence a proceeding to recover possession of the Property.  (Am. Compl. at ECF 93–94).  On September 15, 2021, defendants, as attorneys for Communipaw, verified a petition to evict plaintiff from the Property and obtain possession of the Property.  (Id. at ECF 16–17).  On October 13, 2021, Communipaw filed a notice of petition for a holdover proceeding in Justice Court, Town of Ramapo, seeking possession of the Property and to evict plaintiff (the "Holdover Action").  (Id.).

III.    Renewal of Judgment Action

On February 2, 2022, non-party Lakeside Willow LLC ("Lakeside"), also represented by defendants, sued plaintiff in Supreme Court, New York County, Index No. 505014/2022, for renewal of a monetary judgment (the "Renewal of Judgment Action").  (See Opp. at 192–93).  In the Renewal of Judgment Action, Lakeside—which had been assigned the right to a judgment entered in favor of non-party Signature Bank on June 7, 2012, against plaintiff and certain corporate entities with which he was affiliated (Renewal of Judgment Action, Doc. #1)— obtained a judgment against plaintiff and the affiliated entities in the amount of $356,869.69. (Renewal of Judgment Action, Doc. #22).  Subsequently, Lakeside, as a judgment creditor, levied $306,000 from plaintiff's bank accounts.  (See Opp. at ECF 183–85).  Defendants, as

4

attorneys for Signature Bank and Lakeside, prepared the legal papers seeking the levy.  (See id. at 179–81).

IV.     Seventh Bankruptcy Action

On March 2, 2022, plaintiff filed his seventh bankruptcy petition in this district.  (See In re Joaquin Dean, 22-BR-22101 (SHL) (Bankr. S.D.N.Y.) ("2022 Bankruptcy"), Doc. #1)).  Upon motion by Communipaw, whom defendants represented, on June 2, 2022, the Bankruptcy Court granted an order lifting the automatic stay as applied to Communipaw so that Communipaw could "pursue its rights under applicable law with respect to the eviction of [plaintiff] from the Property and/or the termination of [plaintiff's] possessory rights to the Property."  (Doc. #23-6 at 2).  On July 7, 2022, the Bankruptcy Court dismissed the 2022 Bankruptcy with a two-year bar to refiling.  (Doc. #23-7).

V.      The Instant Action

On October 8, 2021, plaintiff commenced this action by filing a complaint against Communipaw and U.S. Bank, as well as an attorney and the Rockland County Clerk, who were named defendants in the Quiet Title Action.  (Doc. #1).  On December 29, 2021, plaintiff filed an amended complaint adding defendants Doberman and Wohlgemuth, as well as three other attorneys.  (Am. Compl. at ECF 4–6).  By Orders dated July 1, 2022 (Doc. #18), and August 11, 2022 (Doc. #24), the Court dismissed all defendants except Doberman and Wohlgemuth because of plaintiff's failure to serve them with the summons and complaint.

In the amended complaint, plaintiff asserts federal claims for "Fair Housing Opportunity, Race, Mortgage Discrimination, Religion, [and] Income Discrimination."  (Am. Compl. at ECF 2).  In support, plaintiff alleges Wohlgemuth "make comments aboutt Selling property to people Like me."  (Id. at ECF 6).  Plaintiff also alleges "Doberman, write comments about my

5

bankruptcies to Judge, I've find the comment to be discriminatory against me when, I was a victim of an, illegal foreclosure scam." (Id.).

Further, plaintiff alleges that in an affidavit of service, he "was described to have black skin I wasn[']t described as a Afro American male." (Am. Compl. at ECF 6).  However, based on plaintiff's exhibit to the amended complaint, the affidavit of service of Communipaw's ten-day notice was signed by non-party Paul Colaluca, not defendants.  (Id. at ECF 94).  In addition, plaintiff alleges he "believe[s] since, [he is] not a person of the Orthodox faith Living in Rockland County, this is why, I can[']t Live in this community anymore."  (Id. at ECF 6).

As relief, plaintiff requests that the Court "Stop the wrongful Eviction process agai[n]st" him, and "Stop the illegal sell of my home with Communipaw."  (Am. Compl. at ECF 7).

Plaintiff attaches over 200 pages of exhibits to his amended complaint, including documents and filings from the Foreclosure, Quiet Title, and Holdover Actions, news articles about COVID-19 foreclosure and eviction moratoriums, and medical documentation about his COVID-19 diagnosis.  (See Am. Compl. at ECF 9–210 (attaching exhibits)).

In his opposition, plaintiff adds new allegations, claims, and requested relief.  Many of plaintiff's new allegations concern actions that led to the foreclosure of the Property, including claims of misconduct committed by non-parties J.P. Morgan and Steve J. Baum P.C., which seems to have represented J.P. Morgan in the Foreclosure Action, and purported predatory lending by J.P. Morgan against minorities.  Plaintiff also newly invokes the Civil Rights Act of 1866, 42 U.S.C. § 1982 ("Section 1982"), and the Fair Debt Collection Practices Act ("FDCPA"), the First, Fifth, and Fourteenth Amendments of the Constitution, and emotional distress.  (Opp. at ECF 1, 9).

Although most of plaintiff's new allegations do not concern defendants Doberman and Wohlgemuth, those relevant to defendants can be summarized as follows.  Plaintiff states he and Donna Este-Green, Esq., his attorney in the Quiet Title Action, are "Afro-Americans; what's traumatizing that Attorney Este Green wrote a letter on July 19, 2021, to Honorable Judge Eisenpress in respect of Attorney Doberman threatening for wanting to reply on my behalf and Attorney Wohlgemuth making judgmental comments about me," and "Attorney Wohlgemuth & Doberman emotionally traumatizes a woman of color for advocating so unethical."  (Opp. at ECF 1).  The Court construes this allegation to refer to a letter, appended to the amended complaint, in which Doberman wrote to the court presiding over the Quiet Title Action concerning the impropriety of Este-Green's late adjournment request.  (Am. Compl. at ECF 58–59).  In the letter, Doberman laid out the history of plaintiff's various litigations, and stated he believed plaintiff's request for an adjournment—which he noted was plaintiff's second request to adjourn a scheduled hearing on an order to show cause—was "a tactic cynically employed by the Foreclosed Borrower and his counsel in order to defeat the rights of [Communipaw], which are clear."  (Id.).

In addition, in his opposition, plaintiff alleges "Attorney Wohlgemuth, and Attorney Doberman, and with a list of other slanders [plaintiff's] name and character, hearsay with no real burden of proof regarding breach of Contract For nonpayment."  (Opp. at ECF 3).  And, he alleges defendants "never submitted any legal documents of [plaintiff] being in Breach of Contract JP Morgan Chase regarding a dollar amount and default dates, everything was on the Lines of Hearsay."  (Id.).

In support of a purported FDCPA claim against defendants, plaintiff alleges:

65.  Around June 2021, Attorney Doberman, submitted a letter to Rockland Country Supreme to Honorable Judge Eisenpress, presenting a false impression of who I

7

am, professional, and I believed it was slandering my character. 66. I found Attorney Doberman to be very discriminatory because what was written in the letter was not 100% accurate regarding what happened with the entire foreclosure process and bankruptcy. 67. The Attorney advised me that I could fight the case in bankruptcy.

68. Before the June 2021 court hearing, I was in the process of actively pursuing refinancing and hiring Attorney to have this illegal foreclosure to be removed from my credit report. 69. I believe Attorney Doberman persuaded the judge's view of me; I was never offered the opportunity to present to the Court any form of credit support and help that I would have to obtain a fair shot of getting the property back.

(Opp. at ECF 8–9).  In support of his FHA and Section 1982 claims, plaintiff alleges in June 2021, defendants, on behalf of Communipaw, declined plaintiff's offer to pay $400,000 to Communipaw to regain ownership of the Property.  (Id. at ECF 10).  However, he next alleges "[t]he [f]irst [i]ncident occurred" when defendants represented Lakeside (in 2022).  (Id.).

Plaintiff also claims a second incident occurred on July 13, 2021:

[W]hen Attorney Wohlgemuth made some judgmental and discriminatory comments. 82. Attorney Doberman began to threaten; Attorney Este Green for waiting to respond to his paper and wanted to defend me. **Exhibit K** 82. Attorney Este Green had wrote a letter in regarding the incident **Exhibit L** 83. On July 22, 2021, Honorable Judge Eisenpress awarded Communipaw Lafayette L.L.C. [plaintiff's] property.

(Id. at ECF 11).

Furthermore, plaintiff's opposition adds new requests for relief:  specifically, he "request[s] that the $306K"—i.e., the money levied from his bank account by defendants' client, Lakeside, pursuant to the Renewal of Judgment Action—"be returned to the ba[n]k until the case has been resolved in Federal Court."  (Opp. at ECF 14).   He also alleges "Since [plaintiff] didn't move off the property in Nov 2021, Attorney Doberman had T.D. Bank Levy My saving account of" $306,000, which plaintiff believes is "an act of retaliation that will affect me From want to repurchase my house."  (Id. at ECF 11).

# DISCUSSION

I.   <u>Legal Standard</u>

    A.   <u>Rule 12(b)(1)</u>

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Nike, Inc. v. Already, LLC</u>, 663 F.3d 89, 94 (2d Cir. 2011), <u>aff'd</u>, 568 U.S. 85 (2013). "The party invoking the court's jurisdiction bears the burden of establishing jurisdiction exists." <u>Conyers v. Rossides</u>, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." <u>Conyers v. Rossides</u>, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." <u>Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992) (citing <u>Norton v. Larney</u>, 266 U.S. 511, 515 (1925)). When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." <u>Zappia Middle E. Constr. Co., Ltd. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).

Further, federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction <u>sua</u> <u>sponte</u>." <u>Joseph v. Leavitt</u>, 465 F.3d 87, 89 (2d Cir. 2006). And, when a defendant moves to dismiss for lack of subject matter jurisdiction and on

other grounds, the court should consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc.
v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

       B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative
complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v.
Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals
of the elements of a cause of action, supported by mere conclusory statements," are not entitled
to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;
Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded
factual allegations, a court should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard
of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,
557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to
raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d
471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  "Even in a pro se case, however, . . .
threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.     New Allegations and Claims

As an initial matter, in his opposition, plaintiff attempts to add many new allegations and claims that were not included in his amended complaint.

For pro se plaintiffs, "it is appropriate . . . to consider factual allegations made in their opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6.  Although "a pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); see Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008) (summary order) (affirming dismissal of a pro se plaintiff's new constitutional challenge, first raised in an opposition, because the "complaint did not encompass that claim").

Therefore, here, the Court may properly consider new factual allegations introduced in plaintiff's opposition that are consistent with the facts and claims in the amended complaint.  For example, it is appropriate for the Court to consider plaintiff's allegations elaborating upon defendants' purportedly discriminatory statements made in supreme court and town court proceedings, allegations of FHA violations, and allegations regarding his purportedly improper foreclosure and eviction.  However, the amended complaint cannot be construed to allege claims against defendants pursuant to Section 1982, the FDCPA, the First, Fifth, and Fourteenth Amendments, and for "Emotional Damages" (Opp. at ECF 1), and the Court declines to consider them.  See Davila v. Lang, 343 F. Supp. 3d at 267.

11

In addition, the Court declines to consider plaintiff's new request for the return of $306,000 levied from his bank account, because it is newly raised in the opposition without support in the amended complaint and seeks relief only against Lakeside, which was never a named party in this action.

Accordingly, plaintiff's Section 1982, FDCPA, First Amendment, Fifth Amendment, and Fourteenth Amendment, and emotional damages claims, as well as his request to return $306,000 levied from his bank account, are dismissed.

III.   Subject Matter Jurisdiction

Defendants argue the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction over this action.

The Court agrees it does not have subject matter jurisdiction over plaintiff's request to enjoin the sale of the Property and his eviction based on both (i) the Rooker-Feldman doctrine, which applies to any final state court judgments, including those entered in the Foreclosure and Quiet Title Actions; and (ii) the Younger abstention doctrine, which applies to the extent any proceedings are still pending in state court—such as the Holdover Action, although its current posture is unclear.

A.   Legal Standards

1.   Rooker-Feldman Doctrine

The Rooker-Feldman doctrine encapsulates "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). The doctrine bars federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

12

commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industr. Corp., 544 U.S. 280, 284 (2005).

Four requirements must be met for the doctrine to apply:  (i) the plaintiff must have lost in state court; (ii) the plaintiff must complain of injuries caused by a state court judgment; (iii) the plaintiff must invite federal court review and rejection of that judgment; and (iv) the state court judgment must have been rendered before the federal proceedings commenced. See Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d at 85.  A plaintiff invites federal court review and rejection of a state court judgment when the claims brought in federal court are "inextricably intertwined" with the state court's determinations. See Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002).  "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." Id.

Moreover, "it is clear that [p]laintiffs cannot seek to void the state court foreclosure decisions transferring their property," because such claims are "the type of claim that Rooker-Feldman squarely forecloses, both because it addresses an injury caused by the state court judgment and because it would require the district court to review that judgment." Dorce v. City of New York, 2 F.4th 82, 104 (2d Cir. 2021); see Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (Rooker-Feldman bars claims when plaintiff "asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently").

### 2. Younger Abstention Doctrine

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held federal courts are not to enjoin ongoing state court criminal proceedings except in specific, narrow circumstances. Hansel v. Town Ct., 56 F.3d 391, 393 (2d Cir. 1995).  When Younger applies, abstention is

mandatory, and its application deprives the federal court of subject matter jurisdiction.  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 816 n.22 (1976).

The Supreme Court has extended Younger to other exceptional circumstances; as a result, pursuant to Younger, federal court abstention is required for three categories of pending state-court proceedings:  (i) parallel state criminal prosecutions; (ii) civil enforcement proceedings "that are akin to criminal prosecutions"; and (iii) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts."  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013).  With respect to the third category, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their [orders and] judgments."  Cavanaugh v. Geballe, 28 F.4th 428, 434 (2d Cir. 2022).

"Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 72.  Accordingly, when a case presents "none of the circumstances the [Supreme] Court has ranked as exceptional, the general rule governs:  "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  Id. (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. at 817).

"When a plaintiff seeks injunctive relief relating to the same property that is the subject matter of the underlying [pending] state court action," federal courts lack subject matter jurisdiction under Younger.  Ochei v. Lapes, 2020 WL 528705, at *4 (S.D.N.Y. Jan. 31, 2020) (abstaining from "interfer[ing] in [plaintiff's] ongoing state-court eviction proceeding," when plaintiff did not allege sufficient facts supporting Fair Housing and Civil Rights Acts claims and requested injunctive relief).  Accordingly, courts in the Second Circuit have held the Younger

abstention doctrine precludes federal district courts from exercising subject matter jurisdiction over federal actions interfering with pending foreclosure or eviction proceedings because they implicate "the disposition of real property . . . an important state interest." Magana v. Wells Fargo Bank, N.A., 2018 WL 3055782, at *2 (D. Conn.. May 4, 2018).

      B.      Application

            1.      Final State Court Judgments

The Court agrees Rooker-Feldman bars the Court from considering plaintiff's claims to enjoin the already effectuated sale of the Property and his eviction from the Property, because doing so would require reviewing and reversing judgments entered in the Foreclosure and Quiet Title Actions.

The first and fourth "procedural" elements are satisfied. Regarding the first, plaintiff lost the Foreclosure Action when the state court issued the Foreclosure Action Judgment in favor of J.P. Morgan on July 2, 2014, and, plaintiff lost the Quiet Title Action when the state court entered the Quiet Title Action Judgment in favor of Communipaw on July 26, 2021. Regarding the fourth, this action was commenced on October 8, 2021, well after both judgments.

As to the second and third "substantive" elements, plaintiff's request that the Court "stop the illegal sell of my home with Communipaw" (Am. Compl. at 6) is an attempt to reverse the Foreclosure Action and Quiet Title Action Judgments, and therefore prohibited by Rooker-Feldman. See Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d at 427 (barring plaintiff's request for the "federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently" under Rooker-Feldman because it would require the federal court "to determine whether the state judgment was wrongfully issued"). Similarly, plaintiff requests that the Court "stop the wrongful Eviction process agai[n]st" him. (Am. Compl. at 6). Because the

eviction is an injury suffered as a direct consequence of the state court Foreclosure Action and Quiet Title Action Judgments, plaintiff's claim for such relief is likewise barred.

However, Rooker-Feldman does not prohibit the Court from exercising subject matter jurisdiction over plaintiff's FHA discrimination claim (discussed infra in Part IV). Although plaintiff's claim arises from defendants' alleged conduct during the Quiet Title Action, the Rooker-Feldman "doctrine generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding, because the adjudication of such claims would not require the federal court to sit in review of the state court judgment." Hansen v. Miller, 52 F. 4th 96, 100 (2d Cir. 2022) (claim for fraud in procurement of state court foreclosure judgment can "be considered independently of the merits of that foreclosure judgment").

Accordingly, plaintiff's claims to enjoin the sale of his home and his eviction are barred by Rooker-Feldman and must be dismissed.

C.     Pending State Court Proceeding

The Court further concludes the Younger abstention doctrine precludes the Court from considering plaintiff's request to stop the Holdover Action, to the extent it is still pending in town court and to the extent such relief is separate from the final judgments in the Foreclosure and Quiet Title Action Judgments.

First, Communipaw served plaintiff with a notice to vacate the Property on August 10, 2021. (Am. Compl. at ECF 93–94). Thereafter, Communipaw and/or defendants verified a petition seeking possession of the Property and to evict plaintiff on September 15, 2021. (Id. at ECF 16–17). Although the notice of petition for the Holdover Action in Justice Court, Town of Ramapo, is dated October 13, 2021 (id.)—five days after plaintiff initiated this federal action—

16

plaintiff clearly had notice of the Holdover Action in light of his request to "stop the illegal eviction" in the original complaint.  (Doc. #1 at ECF 6).  Further, the posture of the Holdover Action is unclear, but it appears to remain pending based on the parties' representations.

Second, because the Holdover Action implicates the important state interest of property disposition, and plaintiff "alleges nothing to suggest that there are grounds under . . . the Younger abstention doctrine to justify this Court's interference in [his] ongoing state-court eviction proceeding, the Court cannot grant" plaintiff's request to stop the eviction.  See Ochei v. Lapes, 2020 WL 528705, at *4.

However, to the extent plaintiff's FHA discrimination claim involves defendants' alleged conduct during the Holdover Action (discussed infra in Part IV), Younger does not preclude the Court from exercising subject-matter jurisdiction.  "[B]ecause Younger abstention focuses primarily on federal courts interfering with and disrupting ongoing state proceedings, we have in the past held that abstaining from cases involving efforts only to obtain money damages is inappropriate."  Jones v. Cnty. of Westchester, 678 F. App'x 48, 50 (2d Cir. 2017) (summary order).  Thus, the Second Circuit has held "Younger abstention is not appropriate" with respect to civil rights claims seeking monetary damages.  See, e.g., Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000).

Accordingly, to the extent plaintiff's request to enjoin his eviction arises from proceedings in the Holdover Action, and to the extent the Holdover Action remains pending before the town court, such claim must be dismissed.

IV.    Failure to State a Claim

Defendants argue plaintiff does not plausibly allege they violated the FHA, because their alleged conduct does not imply any racially discriminatory intent and because their alleged conduct is unrelated to plaintiff's claimed injuries.

The Court agrees.

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 72–73 (2d Cir. 2021) (rehearing en banc) (citing 42 U.S.C. § 3604(b)).

Here, even drawing all reasonable inferences in plaintiff's favor, plaintiff fails to allege a violation of the FHA because he has not plausibly alleged defendants discriminated against him and he has not alleged defendants' purported conduct occurred in connection with the sale or rental of a dwelling.

First, plaintiff asserts several factual allegations describing conduct by non-parties that are irrelevant to defendants' liability in this action.  Plaintiff alleges in his opposition that he believes he and his children "have been deprived of Fair Housing opportunities in Rockland County; discrimination, predatory lending, and retaliation against our family" (Opp. at ECF 4), which is not tied to any conduct by defendants.  Plaintiff also adds allegations about J.P. Morgan's alleged predatory lending against minorities and discriminatory conduct by other non-parties, which likewise are inapplicable to defendants, who were not involved in the Foreclosure Action.  In addition, plaintiff alleges a non-party described him as having  "black skin" rather than as "Afro-American" in an affidavit of service (Am. Compl. at ECF 6), which does not involve defendants.

Second, none of plaintiff's allegations about defendants support an inference of racial discrimination in the sale or rental of a dwelling.  Plaintiff claims defendants, on behalf of Communipaw, declined plaintiff's offer to repurchase the Property for $400,000, but this only shows defendants informed plaintiff of a decision made by their non-party client, not that defendants acted with any discriminatory intent.  And, plaintiff alleges that during the Quiet Title Action, defendants made judgmental comments about plaintiff, plaintiff's numerous bankruptcies, and plaintiff's request to adjourn a conference.  Such statements do not evince discriminatory intent.  They do not refer to plaintiff's race and, given the context in which they were allegedly made—i.e., during the Quiet Title Action commenced by defendants' client to quiet title when plaintiff remained a holdover tenant at the Property, and to oppose what defendants describe as a dilatory tactic in state court—the Court cannot reasonably infer that these statements was motivated by plaintiff's race.

In addition, plaintiff's conclusory allegation that defendants made discriminatory statements during the Quiet Title Action, which "persuaded the judge's view of" plaintiff (Opp. at ECF 8–9), is conclusory and "insufficient to state a claim of discrimination under the FHA." Tasfay v. Ramos, 2021 WL 4443303, at *2 (S.D.N.Y. Sept. 28, 2021); see Francis v. Kings Park Manor, Inc., 992 F.3d at 72–73 (affirming dismissal of complaint that "lacks even minimal support for the proposition that [defendants] were motivated by discriminatory intent").

Accordingly, plaintiff's FHA discrimination claim must be dismissed.[5]

---

[5]     Even if the Court had opted to consider the Section 1982 claim plaintiff newly raised in his opposition, such claim would be dismissed for the same reasons that plaintiff's FHA claim is dismissed.  See 42 U.S.C. § 1982 ("All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.").  To state a claim under Section 1982, a plaintiff must allege sufficient facts to demonstrate, among other factors, "defendant's intent to discriminate on the basis of [plaintiff's] race" and that "the discrimination concerned one or

V.      Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts "should freely grant leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court ordinarily should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Leave to amend would be futile here because even the most generous reading of plaintiff's amended complaint and opposition does not give any indication he can (i) state a valid claim not precluded by the Rooker-Feldman doctrine or the Younger abstention doctrines; or (ii) plausibly state any federal claim, under the FHA, Section 1982, the FDCPA, or the First, Fifth, or Fourteenth Amendments, against defendants—whose interactions with plaintiff were solely as attorneys representing plaintiff's adversaries in supreme court and town court proceedings. Cuoco v. Moritsugu, 222 F.3d at 112 ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); see Ganley v. City of New York, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) ("The district court does not abuse its discretion when it denies leave to amend because amendment is unlikely to be productive.").

Accordingly, the Court declines to grant plaintiff leave to amend.

---

more activities enumerated in section 1982, such as the purchase and lease of property."  Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 267 (E.D.N.Y. 2009).  As discussed with respect to plaintiff's FHA claim, plaintiff has failed to allege defendants had an intent to discriminate, or that defendants' alleged statements caused plaintiff to not be sold or leased property.

VI.   <u>Filing Injunction</u>

Defendants request that the Court bar plaintiff from commencing any future lawsuits

against them absent leave of the Court.

The Court agrees a filing injunction is appropriate in this case.

"District courts have the authority to issue filing injunctions to prevent vexatious

litigation."  <u>Iwachiw v. N.Y.C. Bd. of Elections</u>, 126 F. App'x 27, 29 (2d Cir. 2005) (summary

order).  Courts consider five factors when deciding whether to grant a filing injunction:

> (1) the litigant's history of litigation and whether it entailed vexatious, harassing,
> or duplicative lawsuits; (2) whether the litigant has an objective good faith
> expectation of prevailing; (3) whether the litigant is represented by counsel; (4)
> whether the litigant has caused needless expense to other parties or an unnecessary
> burden on the courts and their personnel; and (5) whether other sanctions would be
> adequate to protect the courts and other parties.

<u>Id</u>.  "The question the court ultimately must answer is 'whether a litigant who has a history of

vexatious litigation is likely to continue to abuse the judicial process and harass other parties.'"

<u>Schafler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 707 F. App'x 751, 752 (2d Cir. 2018)

(summary order).

The Court addresses each factor in turn.

First, plaintiff has a history of filing vexatious, harassing, and duplicative lawsuits related

to the Property.  For example, plaintiff has filed at least seven bankruptcy petitions in this district

in the last nine years alone.  (Doc. #23-2 at ECF 2).  In plaintiff's most recent bankruptcy

proceeding, the U.S. Trustee moved to dismiss, calling plaintiff a "serial filer," arguing plaintiff

filed the Chapter 11 case in bad faith, and stating plaintiff filed all his bankruptcy proceedings

"solely to stay foreclosure auctions and an eviction proceeding, without complying with basic

fiduciary duties."  (2022 Bankruptcy, Doc. #20-1 at 2).  In response, the Bankruptcy Court

dismissed the 2022 Bankruptcy and barred plaintiff from filing another bankruptcy case for two years.  (Doc. #23-7).

Second, the Court agrees plaintiff does not have an objective good faith expectation of prevailing against defendants.  Defendants were not involved in the Foreclosure Action, and defendants' only connection to the Property is in their representative capacity as attorneys representing clients adverse to plaintiff.  Further, in a prior Order, the Court previously warned plaintiff of the futility of some of his requests, stating:  "These requests are all DENIED.  The Court does not have the power to grant such relief."  (Doc. #9).

Third, plaintiff is pro se and thus is afforded special solicitude.  Here, such solicitude is evidenced by the painstaking work defendants and this Court have taken to parse plaintiff's dense, convoluted, and nearly incomprehensible amended complaint, opposition, and exhibits in this case, as well as other filings on the docket.

Fourth, in this case, plaintiff attached over 200 pages of exhibits to his barebones amended complaint and over 260 pages of exhibits to his opposition.  These exhibits seem to be a disorganized compilation of filings and documents from various court proceedings, news articles, and medical documentation.  Sifting through these papers alone has involved considerable expense for defendants—who have faced a similar predicament in state court proceedings with plaintiff—and an undue burden on the Court.  See Pandozy v. Segan, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007) (pro se plaintiff with "a long history of filing duplicative and vexatious lawsuits, all arising from the sale of his Apartment" put an undue burden on defendants and the Court because of such "lawsuits, and in particular the multitude of lengthy filings submitted in each"), aff'd, 340 F. App'x 723 (2d Cir. 2009) (summary order).

Fifth, in light of plaintiff's representation that over $300,000 of his funds have been levied based on money owed to a judgment creditor, it is unclear whether plaintiff is solvent and capable of paying any monetary sanctions.

In light of the foregoing factors, including that plaintiff has been deemed a "serial filer" in the Bankruptcy Court for filing seven bankruptcy actions—as well as multiple filings in state court—all seeking the same relief he seeks here, the Court grants defendants' request for a filing injunction barring plaintiff from suing defendants for any conduct related to the foreclosure or sale of the Property, or his eviction from the Property, without prior leave of Court.

## CONCLUSION

Defendants' motion to dismiss and request for a filing injunction are GRANTED.

To be clear, Plaintiff is **prohibited** from commencing any new lawsuits against defendants Jeremy Doberman and March Wohlgemuth, arising from the same facts alleged in the amended complaint and opposition, absent prior permission of the Court.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #21), and close this case.

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited, to plaintiff at the address on the docket.

Dated: March 13, 2023
     White Plains, NY                 SO ORDERED:

                                    Vincent L. Briccetti
                                    United States District Judge

23